UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
UNITED STATES OF AMERICA

| | | |
|---|---|---|
| ELLIOT GARNER and ROSE GARNER | CA: | 5:21-cv-00228 |
| VERSUS | | |
| CITY OF MANY, KYLE COOK, UNKNOWN EMPLOYEES, SABINE PARISH DISTRICT ATTORNEY'S OFFICE, DON BURKETT, SABINE PARISH SHERIFF'S DEPARTMENT Through, Sheriff Aaron Mitchell, UNKNOWN DEPUTIES, SABINE PARISH SCHOOL BOARD, UNKNOWN EMPLOYEES, and UNKNOWN INSURANCE COMPANIES | JUDGE: | HICKS |
| | MAG: | HORNSBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## *AMENDED* COMPLAINT FOR DAMAGES

*The items amended from the original complaint are located in Paragraphs 51-60, Pages 12-14, and in these paragraphs, Plaintiffs allege specific instances of how white children and black children are treated differently at the hands of the Sabine Parish School Board and how Plaintiffs have been affected by this discriminatory treatment.*

*The items amended from the original complaint are located in Paragraphs 91-95, Pages 18-20, and in these paragraphs, Plaintiffs allege specifically that Sabine Parish School Board has violated Plaintiffs' substantive due process rights with their deliberate indifference and reckless disregard which has caused damage to them.*

*The items amended from the original complaint is to correct the misnomer of the party Sabine Parish Sheriff's Department through Sheriff Aaron Mitchell to state that Sheriff Aaron Mitchell is being sued in his official capacity as the acting sheriff on behalf of Sabine Parish Sheriff's Department.*

## INTRODUCTION

1. This is a lawsuit brought by the COMPLAINANTS, ELLIOT GARNER, in his own right and on behalf of his minor child, P.G., and ROSE GARNER, in her own right, (sometimes referred to herein as "COMPLAINANT(S)"), for violation of Constitutionally protected rights under the First, Fourth, and Fourteenth Amendment of the U.S. Constitution, 28

U.S.C. 1331, 1343 (a)(1), (2), and (4), and 42 U.S.C. § 1983, 1985, 1988, 12131, 12205, as well as state law claims under relevant state law articles for abuse of process, failure to protect, failure to prosecute, mental anguish, and La. C.C. art. 2320 for vicarious liability. Compensatory damages are sought against all parties involved in the civil rights as allowed by law. Further, punitive damages are sought against all parties involved in the civil rights violation in their personal capacities.

STATEMENT OF JURISDICTION AND VENUE

2. This Honorable Court has federal question jurisdiction over the subject matter of this claim pursuant to First Amendment of the U.S. Constitution, Fourth Amendment of the U.S. Constitution, Fourteenth Amendment of the U.S. Constitution, 28 U.S.C. 1331, 1343 (a)(1), (2), and (4), and 42 U.S.C. § 1983, 1985, 1988, 12131, 12205. This action arises under the Article III, Fourth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, Constitution of the State of Louisiana, and Louisiana Civil Code. This Court has jurisdiction of this cause under La. Const. art. 5, § 10 and 16.

3. Federal jurisdiction over pendant state claims is governed by 28 U.S.C. § 1367, which states: "[I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The state law claims under La. CC art. 2315 for mental anguish, intentional infliction of emotion distress, negligent infliction of emotional distress, and abuse of process and La. C.C. art. 2320 for vicarious liability.

4.  Under <u>Louisiana Revised Statute § 22:655(B)</u>, Plaintiff brings a direct action against Defendant Insurance Companies to recover any and all sums they are obligated to pay Plaintiff on behalf of their insureds or to indemnify their insureds.

5.  COMPLAINANTS bring this action to redress the deprivation under the color of law of rights, privileges and immunities secured to them by provisions of the Fourth and Fourteenth Amendments to the United States Constitution.

6.  Venue is proper with this Honorable Court as at all material times, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district pursuant to <u>28 U.S.C. § 1391</u>.

<u>PLAINTIFFS</u>

7.  ELLIOT GARNER is a person of full age and majority and a resident of the State of Louisiana.  He brings these claims individually and on behalf of his minor child, whose initials are P.G., under <u>42 U.S.C. §§ 1983</u>, <u>1985</u>, and <u>1988</u>, the United States Constitution, federal and state civil rights laws, and the laws of the State of Louisiana, including but not limited to Louisiana Civil Code articles 2315, 2316, 2317, 2320, 3493, and such other relevant state laws.

    ROSE GARNER is a person of the full age and majority and a resident of the State of Louisiana.  She brings these claims individually the 4th Amendment to the U.S. Constitution and under <u>42 U.S.C. §§ 1983</u>, <u>1985</u>, and <u>1988</u>, the United States Constitution, federal and state civil rights laws, and the laws of the State of Louisiana, including but not limited to Louisiana Civil Code articles 2315, 2316, 2317, 2320, 3493, and such other relevant state laws.

DEFENDANTS

8.  CITY OF MANY, through MAYOR KENNETH FREEMAN, a municipality of the State
    of Louisiana, and at all times relevant to this petition, was the employer of defendant,
    UNKNOWN OFFICERS, and who is responsible for all state law delicts under the doctrine
    of RESPONDIAT SUPERIOR and La. C.C. art. 2320, *et sec*., through his official capacity
    only.

    CHIEF OF POLICE OF CITY OF MANY, KYLE COOK, a citizen of Louisiana
    and resident of Sabine Parish, who, at all times relevant to this complaint, was the police
    chief, working for and acting in the course and scope of his employment and acting under
    the color of law with the CITY OF MANY. He is being sued in his official and personal
    capacities.

    UNKNOWN OFFICERS, citizens of Louisiana and residents of Sabine Parish,
    who, at all times relevant to this complaint, were officers working for and acting in the
    course and scope of their employment and acting under the color of law with the CITY OF
    MANY. They are being sued in their official and personal capacities.

    SABINE PARISH DISTRICT ATTORNEY'S OFFICE, through DISTRICT
    ATTORNEY DON BURKETT, a municipality of the State of Louisiana, and at all times
    relevant to this petition, was the employer of defendant, UNKNOWN OFFICERS, and who
    is responsible for all state law delicts under the doctrine of RESPONDIAT SUPERIOR
    and La. C.C. art. 2320, *et sec*.

DON BURKETT, who is the present DISTRICT ATTORNEY of the 11th Judicial District, a position he has held since 1984. He is sued in his official and personal capacities. He directly and in conspiracy with other persons and defendant included herein to deprive COMPLAINANTS of their constitutional rights.

SABINE PARISH SCHOOL BOARD, a self-insured entity, which may be served through Terrell Snelling, president of Sabine Parish SCHOOL BOARD, 695 Peterson Street, Many, Louisiana 71449, and at all times relevant to this petition, was the employer of bad actors, UNKNOWN EMPLOYEES (including but not limited to Assistant Principal Moses Curtis, Coach Ryan Vines, Coach Darrin Dyess, Amy Ebarb, Jess Curtis, and more), and who is responsible for all state law delicts under the doctrine of RESPONDIAT SUPERIOR and La. C.C. art. 2320, *et sec.*

UNKNOWN EMPLOYEES, citizens of Louisiana and residents of Sabine Parish, who, at all times relevant to this complaint, were employees working for and acting in the course and scope of their employment and acting under the color of law with the Sabine Parish SCHOOL BOARD. They are being sued in their official and personal capacities.

*SHERIFF AARON MITCHELL, on behalf of the Sabine Parish Sheriff's Department/Office,* in his official capacity as employer of UNKNOWN DEPUTIES and vicariously liable for state law delicts of said DEFENDANTS through La. CC 2320. *Throughout this complaint, the sheriff's name and Sabine Parish Sheriff's Department/Office will be used interchangeably.* This is the current sheriff. However, the sheriff at the time of the incident was Sheriff Ronnie Richardson.

UNKNOWN DEPUTIES, are citizens of Louisiana and residents of Sabine Parish, who, at all times relevant to this complaint, were deputies working for and acting in the

course and scope of their employment and acting under the color of law with the Sabine Parish Sheriff's Department. They are being sued in their official and personal capacities.

UNKNOWN INSURANCE COMPANIES, insurance companies for each of the foregoing individuals and insurance agencies, who are sued by this fictitious name, until which time that COMPLAINANTS can discovery their proper, legal names. COMPLAINANTS are informed and believe, and on that basis, allege that each UNKNOWN INSURANCE COMPANY is responsible in some manner for the injuries and damages sustained by each of the COMPLAINANTS, as set forth herein.

9.  COMPLAINANTS will amend their complaint to state the names and capacities of UNKNOWN INSURANCE COMPANIES, UNKNOWN DEPUTIES, and UNKNOWN OFFICERS, when they have been ascertained.

10. COMPLAINANTS are informed and believe and that each DEFENDANTS were at all material times an agent, servant, employee, partner, joint-venturer, co-conspirator, and/or alter ego of the remaining DEFENDANTS, and in doing the things herein alleged, was acting within the course and scope of that relationship.

11. COMPLAINANTS are further informed and believe that each of the DEFENDANTS herein gave consent, aid, and assistance to each of the remaining DEFENDANTS, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity that ultimately violated the civil and constitutional rights and were an integral participant in the conduct described herein, resulting in the deprivation of COMPLAINANTS' constitutional rights and other such other harm.

12. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of Louisiana.

13. This complaint may be pled in the alternative pursuant to Federal Rule of Procedure 8(d).

14. At all times relevant herein, all officials were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of their employer named herein, and otherwise performed and engaged in conduct incidental to their performance of their lawful functions in the course of their duties.

15. On information and belief, DEFENDANTS' policy, practice and custom of engaging in faulty investigations, unlawful searches, and unlawful seizures, and false imprisonment has been promulgated, effectuated and/or enforced in bad faith as a matter of express policy or custom and contrary to clearly established law.

GENERAL ALLEGATIONS

16. On January 31st, 2020, COMPLAINANT, ROSE GARNER, was driving down the highway in Many, Louisiana, when she was flagged down by a random citizen to pull over on the side of the road, which she did.

17. The random citizen hugged her and told her everything was going to be okay, so ROSE GARNER inquired as to why the random citizen was behaving that way.

18. The random citizen informed ROSE GARNER that her stepson, P.G. had been held down by a group of males at Many High School, sodomized with a mechanical pencil, then with fingers, and that the incident was videoed and posted on the internet earlier during the week.

19. ROSE GARNER was then shown the video by the random citizen, and ROSE GARNER made a recording of the video to take to the SABINE PARISH SHERIFF'S DEPARTMENT to make a report.

20. ROSE GARNER, immediately, returned home to question P.G. about what she had found out, and P.G. confirmed what had happened to him.

21. ROSE GARNER, then, took the child to the SHERIFF'S DEPARTMENT, where UNKNOWN DEPUTY indicated that he could not take a report and that she needed to go to the CITY OF MANY to make a report, despite the felony nature of the offense.

22. SABINE PARISH SHERIFF'S DEPARTMENT and UNKNOWN DEPUTY refused to allow ROSE GARNER and P.G. to make a statement or leave a copy of the video evidence of the sexual assault.

23. ROSE GARNER, then, took P.G. to the CITY OF MANY, police department to make a statement and file a report.

24. ROSE GARNER was told by UNKNOWN OFFICER that the person she needed to speak with was not there and that she should come back on Monday or wait for someone would call her.

25. ROSE GARNER and P.G. left CITY OF MANY, police department and returned approximately one hour later.

26. ROSE GARNER forced UNKNOWN OFFICER to watch the video of the sexual assault and make a recording of the sexual assault video and take down her information.

27. After UNKNOWN OFFICER recorded the video of the sexual assault, UNKNOWN OFFICER indicated that nothing could be done until Monday, February 3rd, 2020.

28. ROSE GARNER, growing impatient with the lack of help from the SHERIFF'S DEPARTMENT and UNKNOWN DEPUTY (who outright turned her away not allowing her to make a report), and CITY OF MANY and UNKNOWN OFFICER (who attempted to turn her away, but she returned shortly after and made them take a copy of the video evidence), called the Louisiana State Police (LSP) to informed them of the sexual assault, at which point an investigation into the sexual assault actually began.

29. At the time that ROSE GARNER went to SHERIFF'S DEPARTMENT and CITY OF MANY to report the sexual abuse, neither SCHOOL BOARD, nor anyone on their behalf had called to inform ROSE GARNER or her husband, ELLIOT GARNER, that their son had been raped nor any other police agency or the Department of Children or Family Services, despite their being mandatory reporters.

30. In fact, late in the evening on January 31, 2020, Assistant Principal Curtis called ELLIOT GARNER and stated that "something happened with P.G., but it will be taken care of by Monday." At no point during this conversation was ELLIOT GARNER informed that his child had been sexually assaulted in the locker room at school.

31. To make matters worse, P.G. was kidnapped, held down, sodomized, and raped by 9 perpetrators on January 28th, 2020. This was discovered by Coach Vines, who walked in on the act, and so, was immediately aware of the criminal occurrence on January 28th, 2020.

32. Despite his knowledge of the incident and collection of the video, neither the Department of Children and Family Services, SABINE PARISH SHERIFF'S DEPARTMENT, or CITY OF MANY was informed of the incident until January 31st, 2020 when ROSE GARNER took her son and the video to the agencies.

33. From the onset of the incident, P.G. has been treated like nothing has happened to him. Almost as if he's the accused, due to the actions, or rather inactions of DEFENDANTS. DEFENDANTS have ensured that the perpetrators would not be held accountable for their actions. Perpetrators, instead, were given preferential treatment by DEFENDANTS and their employees.

34. Upon reason and belief that LSP officers drafted and filed the arrest warrants for the arrest and detention of the 6 arrested perpetrators, which should have been sought by UNKNOWN OFFICER, UNKNOWN DEPUTY, SABINE PARISH SHERIFF'S DEPARTMENT, and/or CITY OF MANY, as the video of the sexual assault had been in their possession since January 31st, 2020.

35. Upon information and belief that another minor child was brutally raped and sodomized by the same perpetrators the day prior to P.G. being raped and sodomized. However, DEFENDANTS failed to investigate, protect, prosecute, or pursue any charges against the perpetrators in that case as part of this conspiracy.


EQUAL PROTECTION AND 42 U.S.C. § 1983

36. COMPLAINANTS repeat and reallege each allegation of this complaint under each cause of action and subsection of this COMPLAINANT.

37. COMPLAINANTS are entitled to equal protect of laws.

38. An Equal Protection violation occurs when unequal treatment is given to similarly situated individuals and when the unequal treatment stems from a discriminatory intent.

39. COMPLAINANTS allege that each of the DEFENDANTS, acting under the color of law, intentionally discriminated against COMPLAINANTS based on their race, sex, and economic status and that there is no rational basis for the difference in treatment.

40. COMPLAINANTS allege that CITY OF MANY, SABINE SHERIFF'S DEPARTMENT, UNKNOWN OFFICERS, UNKNOWN DEPUTIES, who are required to administer police services in a non-discriminatory manner. However, these specific DEFENDANTS violated COMPLAINANTS' right of this non-discriminatory policing action when they failed to take their reports of the allegations of a sexual assault from January 31, 2020 until February 3rd, 2020 or thereafter by failing to interview victim, failing to make a police report, failing to request a warrant for the arrest of the alleged perpetrators, failure to receive video of sexual assault, and requesting that the victim and his family leave the premises and that someone would contact them on Monday.

41. In this instance, CITY OF MANY, SABINE SHERIFF'S DEPARTMENT, UNKNOWN OFFICERS, UNKNOWN DEPUTIES caused injury to P.G., and all COMPLAINANTS, from their failure to prosecute and/or failure to protect without rationale, despite their statutory imposition to enforce the laws equally and fairly.

42. DON BURKETT, acting Sabine Parish DISTRICT ATTORNEY, failed to prosecute and protect the victim, P.G., his family, and the public, which was done so without rationale, despite their statutory imposition to enforce the laws equally and fairly.

43. COMPLAINANTS seek relief for the failure for DEFENDANTS to investigate their claims, for the alleged conspiracy with the CITY, SHERIFF, SCHOOL BOARD, UNKNOWN OFFICERS, UNKNOWN DEPUTIES, POLICE CHIEF, and DA's OFFICE not to investigate their claims, and for the alleged long-standing practice, policies and

procedures that fostered the failure to investigate resulting in a discriminatory impact upon sexual assault victims, who are minorities, juveniles, and an indigent in violation of the Equal Protection and Due Process Clauses.

44. COMPLAINANTS allege that the civil rights violations in connection with DEFENDANTS' failure to investigate and refusal to prosecute sex crimes.

45. P.G. suffered a sexual assault at the hands of 9 perpetrators. This sexual assault was videoed and posted on SnapChat for the world to see. Only 6 of the 9 perpetrators were arrested, despite their videoed, involvement in the sexual assault and the video evidence of their involvement. To date, bills of information have not been filed against any of the arrested perpetrators.

46. P.G. complains of the occurrence of the sexual assault upon him, the failure of the criminal process as to his case, and the many injuries, including but not limited to physical pain and suffering, mental/emotional pain and distress, anxiety, PTSD, embarrassment, and shame, which is reasonable concerning the facts of the case and the effects it would have on a reasonable person in a similar situation.

47.  At all relevant times, DEFENDANTS acted individually and together, and under color of law.

48. DEFENDANTS knew that COMPLAINANTS had provided evidence of sexual assault and further knew that none of the DEFENDANTS were taking steps to properly investigate the allegations.

49. DEFENDANTS had a duty to diligently investigate the allegations and to collect the evidence, submit to the proper agency for review, follow-up with agencies concerning the

evidence, review it, question witnesses and the victim, and follow-up on the sexual assault examination as part of their own investigation.

50. DEFENDANTS never ordered or requested that a psychological evaluation or rape kit be administered to P.G.

51. *Plaintiffs allege that the treatment of P.G. deviated and was completely different than other persons who may have undergone the same treatment that were similarly situated individuals.*

52. *Two white children were permitted to "dress out" for practice in the coach's office, so as not to be subjected to the brutal rape culture that is clearly propagated by the School in the locker room.*

53. *Likewise, another child, of African American decent, was brutally raped the day prior to P.G. in a similar manner, and his incident was treated similarly by the School Board, thereby supporting that the School Board has a policy of treating African American students differently that the similarly situated white/Caucasian children.*

54. *Despite teachers/coaches being aware of the rape of P.G. and the other African American child, they failed to inform the necessary agencies, even though they are mandatory reporters. Upon reason and belief that none of these teachers have been reprimanded for their failure to report the crimes on these children in a timely manner. Which, Plaintiffs aver is the result of their child being of African American descent.*

55. *On another occasion, an African American child was expelled from school for being arrested for an incident involving a firearm (charges were ultimately dismissed) occurring at his home after school hours, and a similarly situated white child, who brought a gun onto the school premises, was not expelled and permitted to return to the school.*

56. *Since the time of P.G.'s rape, he was denied the right to attend another school and still be permitted to play sports because he resided outside of the school district, and the School Board would not grant him a hardship excuse to be able to play sports. Further, P.G. was denied his letter jacket. All the while, several white children have been granted hardship excuses to play sports despite not residing in the parish where they lived (Children's initials A.M., D.K., J.M., E.D.). Likewise, other white students who were similarly situated were permitted to receive their letterman's jackets at their schools of desire despite not having qualified to receive them from that particular school.*

57. *Once again furthering the treatment of incidents involving African American students being treated differently than similarly situated white students.*

58. *Further still, that P.G. is not a class of one, as other African American students are being treated the same as he is being treated while similarly situated white students are being treated differently. As well, the School Board has a policy of treating white children, similarly situated, very differently and favorably compared to their treatment of black children.*

59. *Due to the discrimination and different treatment of similarly situated white students, Plaintiff's child has suffered severe and debilitating emotional distress and shame that has and will affect him throughout the remainder of his life.*

60. *The repeated actions, or inactions, of the School Board in discriminate treatment occurring between the black and white children in their school system do arise to more than a mere negligent difference, but instead rises to the level of intentional and/or deliberately indifferent, and the result is a reasonable cause of Plaintiffs' damages in this case.*

61. DEFENDANTS, acting individually and together, conspired to and engaged in a course of conduct that deprived COMPLAINANTS of their constitutional property right in the video and other evidence, their right to seek redress in the courts, and of their property interest by failing to investigate the accused and failing to pick up, analyze, examine, or submit necessary evidence.

62. With deliberate indifference DEFENDANTS failed to implement procedures in either the Sheriff's Department, CITY OF MANY, or the DISTRICT ATTORNEY'S OFFICE to provide for proper investigation of juvenile, African American, and/or indigent rape cases and proper review, examination, collection, and handling of evidence.

63. DEFENDANTS' deliberate, and willful and wanton conduct created a danger of an increased risk of harm to COMPLAINANTS, the public, and other victims of sexual assault, who are persons of the same classification, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are allowed to prey on victims without fear of investigation by DISTRICT ATTORNEY'S OFFICE, SHERIFF'S DEPARTMENT, SCHOOL BOARD, and CITY OF MANY.

64. At all relevant times, DEFENDANTS' conduct was intentional, under color of law, and motivated by COMPLAINANTS' race, age, and economic class.

65. On information and belief, DEFENDANTS have a history of discriminating against African Americans, juveniles, and indigent people. DEFENDANTS have treated sexual assault reports from these classes of individuals with less priority than other crimes not involving these classes, with not legal, lawful, or rational basis or justification.

66. DEFENDANTS, acting individually and collectively, had the duty and ability to prevent the violation of COMPLAINANTS' constitutional rights, but failed to do so.

67. DEFENDANTS' conduct violated the Fourteenth Amendment's promise of equal protection of the laws and 42 U.S.C. section 1983.

68. As a direct and proximate result of DEFENDANTS' actions, omissions, policies, practices and customs, COMPLAINANTS were denied the rights afforded to them by the state and federal constitutions.

69. As a direct and proximate result of DEFENDANTS' actions and inactions, COMPLAINANTS suffered extreme emotional pain and suffering.

70. COMPLAINANTS aver that DEFENDANTS conspired to deny COMPLAINANTS equal protection of the laws and to injure them for their efforts to ensure the rights of others to equal protection.

71. COMPLAINANTS aver that DEFENDANTS colluded and conspired against them to silence them based on their race (African American), age (juvenile), social class (indigent), as both juveniles that were molested including P.G. were both African America juvenile males.

72. At all material times, each Defendant was jointly engaged in tortious activity and integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

73. DEFENDANTS conspired to ensure that P.G.'s constitutional rights to equal protection, due process, and a property right in his video.


DUE PROCESS AND 42 U.S.C. §§ 1983

74. COMPLAINANTS repeat and reallege each allegation of this complaint under each cause of action and subsection of this COMPLAINANT.

75. At all relevant times, DEFENDANTS acted individually and together, and under color of law.

76. DEFENDANTS knew that COMPLAINANTS had provided evidence of sexual assault and further knew that neither Defendant was taking steps to properly investigate the allegations.

77. DEFENDANTS had a duty to diligently investigate the allegations and to collect evidence, submit it to the appropriate agency, and review it as part of their own investigation.

78. With deliberate indifference DEFENDANTS failed to implement procedures in either the Sabine Parish SCHOOL BOARD, CITY OF MANY, Sheriff's Department and/or the DISTRICT ATTORNEY'S OFFICE to provide for proper investigation of rape cases and proper review, examination, collection, and handling of rape evidence.

79. DEFENDANTS, acting individually and collectively, had the duty and ability to prevent the violation of COMPLAINANTS' constitutional rights, but failed to do so.

80. DEFENDANTS' deliberate indifference and willful and wanton behavior created a danger and increased risk of harm by sexual assault.

81. DEFENDANTS' conduct violated the Fourteenth Amendment's promise of substantive due process and 42 U.S.C. section 1983.

82. As a direct and proximate result of DEFENDANTS' actions, omissions, policies, practices and customs, COMPLAINANTS were denied the rights afforded to them by the state and federal constitutions.

83. DEFENDANTS violated COMPLAINANTS' civil rights by having an express policy that, when enforced, caused a constitutional deprivation to them, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal

policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

84. The constitutional injury inflicted by DEFENDANTS was caused by a person with final policymaking authority at the CITY OF MANY, and/or Sabine Parish, SCHOOL BOARD, SHERIFF'S OFFICE, and/or DISTRICT ATTORNEY'S OFFICE.

85. As a direct and proximate result of DEFENDANTS' actions, COMPLAINANTS suffered extreme emotional pain and suffering.

86. DEFENDANTS failure to Investigate deprived COMPLAINANTS of their substantive due process rights by taking his property, failing to prosecute the crime, failing to investigate the crime, failing to protect, failing to present evidence to the necessary agency, and failure to prosecute all alleged perpetrators for their involvement in the crime.

87. COMPLAINANTS have a constitutional property right/interest in the video and other evidence and DON BURKETT, DISTRICT ATTORNEY, ignoring video and other evidence and failing to present evidence to a trial or forward video to the Federal Bureau of Investigation (FBI) for further investigation and prosecution for the dissemination of the video via SnapChat constitutes a "taking" without substantive due process.

88. COMPLAINANTS aver that DEFENDANTS deprived P.G. of his due process rights to have the crime for which he was the victim properly investigated and pursued.

89. Upon information and belief that DEFENDANTS conspired to protect perpetrators from prosecution resulted in the violation of P.G.'s rights to equal protection under the law and substantive due process.

90. COMPLAINANTS aver that their emotional injury is the direct cause of the violation of their constitutional rights and interests.

91. *SABINE PARISH SCHOOL BOARD is guilty of deliberate indifference and reckless disregard towards the students of the deprivation of their substantive due process rights for the following reasons, to-wit:*

   a. *SCHOOL BOARD knew that an unusually serious risk of harm existed as they permitted bullying, harassment, and sexual assault to occur in the locker rooms for the athletes for years prior to the incident at issue in this case;*

   b. *SCHOOL BOARD has knowledge of, not only this bullying and sexual assault incident, but also has knowledge of other incidents of molestation and harassment of students on student and teachers/principals on students, prior to this incident and has repeatedly failed to step in to protect the children/students in their care and have bolstered students and teachers bullying and sexual assault behavior for years;*

   c. *SCHOOL BOARD's knowledge of these incidents can be found through testimony of students and their parents made to the individual schools, to the school board directly, and to the related policing agencies that have resulted in no investigation or actions taken after the complaints of bullying, harassment, and sexual assault on these students;*

   d.  *Upon reason and belief, even within the year prior to the allegations of this suit, SCHOOL BOARD has stated to the parents that each of the school is required to conduct their own, internal investigation of the claims, and that each has come back stating that there has been no wrongdoing, despite the parents' continued complaints of the same actions being repeated on multiple occasions;*

e.  *Upon reason and belief that SCHOOL BOARD has stated specifically that it is not their job to ensure discipline for wrongdoing of students and other subordinates;*

f.  *Upon reason and belief that SCHOOL BOARD was aware that students were being bullied and sexually assaulted in the locker rooms for year, even some teachers, who had previously attended school in these systems, having been subjected to the same/similar treatment years prior;*

g.  *Upon reason and belief that one child was being sexually harassed so harshly by a coach that she was forced to stop playing a sport, despite repeated complaints made to the school and school board;*

h.  *Upon reason and belief that coaches and teachers who became aware of the bullying and sexual assault in the locker rooms were told specifically by principals and SCHOOL BOARD to not report the incident further and that they would "take care of it," despite no further action being taken on their parts to report these incidents to the police or such other agency.*

92. *Plaintiffs, further, allege that a special relationship does exist between SCHOOL BOARD and its students as Louisiana law does require that students attend school. Further, both they and their parents can be held criminally liable for failing to attend school.*

93. *The bad actions taken against P.G. happened during mandatory school attendance hours.*

94. *At the time that the incident occurred, P.G. was not participating in a school sanctioned activity as he was walking in the atrium when he was dragged into the locker room by perpetrators who proceeded to take his pants off and assault him.*

95. *Upon reason and belief that SCHOOL BOARD has a policy regarding use of cell phones at school such that cell phones can be brought to school but cannot be used during school*

*hours. Despite this fact, SCHOOL BOARD allows the students to regularly violate this policy. As a result, P.G.'s assault was videoed and shared on the internet, during school hours.*

CIVIL CONSPIRACY AND 42 U.S.C. §1983 & 1985

96. COMPLAINANTS repeat and reallege each allegation of this complaint under each cause of action and subsection of this COMPLAINANT.

97. COMPLAINANTS aver that evidence exists that DISTRICT ATTORNEY'S OFFICE, SCHOOL BOARD, SHERIFF'S DEPARTMENT, CITY OF MANY, DON BURKETT, their employees and the perpetrators' families colluded and/or conspired to turn away COMPLAINANTS when they were attempting to file a complaint about the sexual assault, to discourage victim and their family from filing a complaint, discouraging victim from disclosing the sexual assault to his parents, to coverup the sexual assault, to hide information concerning certain perpetrators' involvement in the sexual assault.

98. In the collusion and/or conspiracy, each DISTRICT ATTORNEY'S OFFICE, SCHOOL BOARD, SHERIFF'S DEPARTMENT, CITY OF MANY, DON BURKETT, their employees and the perpetrators' families used their authority in their positions to block the investigation and prosecution of the sexual assault, and they were aware of the existent of the conspiracy as they communicated between themselves to forward the allegations alleged above.

99. DEFENDANTS conspired to perform illegal acts with the intention of violating COMPLAINANTS constitutional and state law rights and acted in furtherance of the conspiracy by downplaying the severity of the allegations, refusing to take reports or complaints, failing to keep the victim and his family reasonably informed concerning the

perpetrators of the assault, failing to move forward with prosecution of the perpetrators, failing to issue arrest warrants for the perpetrators, failing to pursue revocations of bond when becoming aware that the restriction of bond were being violated, and by failing to bill perpetrators adequately for the crimes for which they were arrested.

100.     COMPLAINANTS have been deprived of their civil rights as a result of the collusion and/or conspiracy.

101.     COMPLAINANTS aver that a prior agreement can be shown by the following:

   a.  Allegedly no mandatory reporter from Many High School and UNKNOWN EMPLOYEES were aware of the rape made a report to the Department of Children and Family Services, Sabine Parish Sheriff's Department, CITY OF MANY, or Sabine Parish DISTRICT ATTORNEY'S OFFICE;

   b.  However, upon arrival of the mother of the victim, P.G., the Sabine Parish Sheriff's Department stated, prior to hearing her complaint, that they were unable to take a report from her and that she was required to make a report at the CITY OF MANY, despite the felony nature of the report to be made;

   c.  Further, upon arrival to CITY OF MANY, the mother was told that the person she needed to speak with was not present and was told that she would be contacted Monday, February 3rd, 2020, despite not being permitted to write a report, make a complaint, or for anyone to review a copy of the video evidence;

   d.  The mother was told specifically that she would receive a call from someone regarding her complaint, but her phone number was never taken by the officer,

   e.  To date, DON BURKETT, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY have not taken a statement from P.G. or his family;

f.   DON BURKETT, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF
     MANY have met repeatedly with the perpetrators' families to ensure that the result
     of their involvement of this crime would be minimized, if not dismissed altogether;

g.   In support of the collusion and/or conspiracy allegation, COMPLAINANTS aver
     that each time they requested a copy of the P.G.'s statement, each individual/
     agency informed COMPLAINANTS) that they were informed by the Sabine Parish
     DISTRICT ATTORNEY'S OFFICE that any requests for P.G.'s statement or other
     evidence must go through the DISTRICT ATTORNEY'S OFFICE and/or not be
     released to the victim or his family;

h.   KYLE COOK informed victim and his family that he was told by the DISTRICT
     ATTORNEY not to release any information concerning the investigation to them;

i.   Any time COMPLAINANTS would request a copy of any document that they
     should have been privied to as the victim of a sexual assault, they were informed
     that the information was being held at the Sabine Parish DISTRICT ATTORNEY'S
     OFFICE and that they would have to go through the DA's office to receive a copy
     of the items requested.

j.   Each time COMPLAINANTS attempted to retrieve any documents or information
     from the DA's Office, they were informed that the information could not be
     released to them, they were not entitled to the information, someone would provide
     the information to them at a later date, or that their attorney needed to formally
     request a copy of the information sought, despite the fact that they are the victim
     and victim's immediate family and that the information requested is/was
     information that should be readily available to the public, but instead, is being held,

not as a public record, but under lock and key at the DISTRICT ATTORNEY'S
OFFICE in violation of COMPLAINANTS' First and Fourteenth Amendments of
the U.S. Constitutional Rights;

k.  Each time COMPLAINANTS attempted to retrieve documents or request an update
on the status of the case or any of the arrested perpetrators, they were greeted with
the response that their call or request was expected, as individuals from the
previously visited agency would call the next agency to "give them a heads up" that
information was being requested about P.G.'s sexual assault case.

l.  In violation of 42 U.S.C §1985, COMPLAINANTS believe that DEFENDANTS
conspired to punish and silence P.G. and other African American, juvenile, sexual
assault victims to prevent and discourage them from pursing charges and disclosing
the sexual assault incidents.

m.  Perpetrators' families conspired with DA, SCHOOL BOARD, and such other
individuals to produce letters of recommendation, written on SCHOOL BOARD
letterhead in support of favorable and lenient treatment of the rape perpetrators;

n.  A SCHOOL BOARD representative, Coach Vines, conspired with Jess Curtis,
Amy Ebarb, DON BURKETT, and other SCHOOL BOARD employees to produce
letters of recommendation, written on SCHOOL BOARD letterhead in support of
favorable and lenient treatment of the rape perpetrators;

o.  DISTRICT ATTORNEY'S OFFICE, SCHOOL BOARD, Sheriff's Department,
and CITY OF MANY conspired to not forward rape video to FBI or LSP for outside
investigation of the assault;

p.  Neither Sheriff's Department, CITY OF MANY, or DISTRICT ATTORNEY'S OFFICE generated arrest warrants to be served on the perpetrators, in support of the collusion;

q.  DISTRICT ATTORNEY, DON BURKETT, as a dual representative of both agencies, conspired to reduce charges for perpetrators to lessen liability of SCHOOL BOARD and its employees and their children, who were involved in the rape;

r.  Perpetrator families, DISTRICT ATTORNEY'S OFFICE, SCHOOL BOARD, Sabine Parish Sheriff's Department, and CITY OF MANY conspired to allow perpetrators to attend school in violation of the bond restrictions and conditions without revoking the perpetrators' bonds;

s.  DA colluded with one of the perpetrator's fathers concerning the fact that if his child got in trouble for his involvement in the rape that private, damning, and illegal information concerning the DA would be released to the public;

t.  DON BURKETT conspired with Sabine Parish SCHOOL BOARD, Coach Vines and Assistant Principal Curtis to keep the video of the rape secret from the parents of the victim and for the report to not be formally made to Sheriff's Department and CITY OF MANY;

u.  Sheriff's Department colluded and conspired with DISTRICT ATTORNEY to release perpetrators without Judge's bond restrictions being enforced and amend bond obligations by agreement with defense counsel without informing victim and his family;

v. SHERIFF'S OFFICE, through UNKNOWN DEPUTIES, entering COMPLAINANTS' home, illegally, without consent and/or warrant, to take images of the inside of their home and intimidate the victim, P.G., who is a minor child, shortly after rape allegation was reported to the CITY OF MANY, after the Sabine Parish Sheriff's Department, who refused to take the report;

w. When confronted with the unlawful entry, UNKNOWN DEPUTIES admitted to going inside COMPLAINANTS' home without a warrant and without exigent circumstances and apologized to ROSE GARNER via speakerphone at the Sheriff's Department. Thereby confirming the violation of COMPLAINANTS' 4th amendment rights;

x. To date, no criminal charges have been brought by Sabine Parish DA's office for the unlawful entry into COMPLAINANTS' home, nor administrative reprimands internally.

102. COMPLAINANTS aver that DEFENDANTS, acting in concert with one another and other unknown coconspirators, conspired to violate COMPLAINANTS' civil rights and ensure that the perpetrators either walk free or have minimal repercussions, despite the severity of the sexual assault.

103. DEFENDANTS met prior to and after perpetrators' arrests in February 2020, and at unknown other times, and agreed that perpetrators should not be prosecuted for the crimes for which they committed.

104. On information and belief, DEFENDANTS agreed they would not retrieve evidence and forward any examinations and formal interviews of the victim and not to fully prosecute the perpetrators.

105.     On information and belief, DEFENDANTS DSITRICT ATTORNEY'S OFFICE, BURKETT, SCHOOL BOARD, SHERIFF'S DEPARTMENT, CHIEF COOK, and CITY OF MANY told their investigating officers, deputies, and agencies that they were not to investigate the case or question of the juvenile prosecutors. And further, to cover-up, hide, and downplay the serious nature of the offense by failing to investigate and prosecute the perpetrators.

106.     DEFENDANTS made this/these agreements using their official positions and power under the color of law and each took concrete steps violate COMPLAINANTS' federal and state constitutional rights as the victim, and parents of the victim, of a violent sexual assault.

107.     As a direct and proximate result of the DEFENDANTS' conspiracy, COMPLAINATS suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, as set forth more fully above.

108.     Each individual Defendant (in their previously delineated capacities) is therefore liable for the violation of COMPLAINANTS' rights.

109.     COMPLAINANTS allege that a conspiracy exists/existed between DEFENDANTS, which was intentional, and a part of a broader conspiracy and plan to protect Perpetrators and reduce liability of the SABINE PARISH SCHOOL BOARD.

110.     DON BURKETT, who is and has been the acting DISTRICT ATTORNEY since 1984, has a dual representation of the Sabine Parish DISTRICT ATTORNEY'S OFFICE, as well as the Sabine Parish SCHOOL BOARD.

111.    Upon reason and belief that DON BURKETT conspired with all DEFENDANTS and perpetrators' and their families, and agreed not to investigate COMPLAINANTS' sexual assault complaint to ultimately protect the perpetrators, their families, and the SABINE PARISH SCHOOL BOARD from prosecution and liability.

112.    Upon reason and belief that DON BURKETT conspired with the SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and the CITY OF MANY to not take the sexual assault allegation. Thereby, forcing P.G.'s stepmother, to involve the Louisiana State Police (LSP), who up until she reached out to them, had not been contacted by any DEFENDANTS.

113.    Upon reason and belief that Coach Vines, an employee of SABINE PARISH SCHOOL BOARD, conspired with DON BURKETT, SABINE PARISH SHERIFF'S DEPARTMENT, CITY OF MANY, UNKNOWN OFFICERS, UNKNOWN DEPUTIES, and KYLE COOK to minimize the sexual assault allegations of P.G. as Coach Vines' minor child was involved in the perpetration of the sexual assault.

114.    Upon reason and belief that Assistant Principle, Dyess, an employee of SABINE PARISH SCHOOL BOARD, conspired with DON BURKETT, SABINE PARISH SHERIFF'S DEPARTMENT, CITY OF MANY, UNKNOWN OFFICERS, UNKNOWN DEPUTIES, KYLE COOK, and SABINE PARISH SCHOOL BOARD to intimidate P.G. and minimize the allegations for the sole purpose of protecting perpetrators and the SABINE PARISH SCHOOL BOARD.

4TH AMENDMENT VIOLATION

115.     SHERIFF'S     OFFICE,    through     UNKNOWN     DEPUTIES,    entered

COMPLAINANTS' home, illegally, without consent and/or warrant, to take images of the

inside of their home and intimidate the victim, P.G., who is a minor child, shortly after rape

allegation was reported to the CITY OF MANY, after the SABINE PARISH SHERIFF'S

DEPARTMENT, who refused to take the report.

116.     Unless SHERIFF'S DEPARTMENT had colluded or conspired with CITY OF

MANY, DISTRICT ATTORNEY'S OFFICE, SCHOOL BOARD, or any of their

employees, then why a few days after the report of the sexual assault made to the CITY,

where UNKNOWN DEPUTIES walking through COMPLAINANTS' home taking

pictures of the home and attempting to speak with their minor child, absent exigent

circumstances.

117.     When P.G. realized UNKNOWN DEPUTIES were in his home, he asked what they

were doing in there and that he didn't hear a knock at the door. Without saying another

word, UNKNOWN DEPUTIES put their phones/cameras away and exited the home

without saying anything further to the child.

118.     Eyewitnesses, who saw UNKNOWN DEPUTIES enter the home state, stated that

they believe the DEPUTIES had been watching the home for some time as they walked up

from an unknown location and their vehicle was never seen in COMPLAINANTS'

driveway, and without checking to see if the front door was unlocked, they immediately

went to the backdoor of the family home and walked in, just as the family always had done.

119.     When P.G. had informed ROSE GARNER had happened when she was at the store,

she call SHERIFF'S DEPARTMENT, and another deputy got UNKNOWN DEPUTIES

on the phone and UNKNOWN DEPUTIES admitted to going inside COMPLAINANTS'
home without a warrant and without exigent circumstances and apologized to ROSE
GARNER via speakerphone at the Sheriff's Department. Thereby, confirming the violation
of COMPLAINANTS' 4th amendment rights.

## POLICIES, PROCEDURES, OR LACK THEREOF

120.     COMPLAINANTS repeat and reallege each allegation of this complaint under each
cause of action and subsection of this COMPLAINANT.

121.     Upon reason and belief that SABINE PARISH DISTRICT ATTORNEY'S
OFFICE, PARISH OF SABINE, and CITY OF MANY are municipalities of the State of
Louisiana.

122.     COMPLAINANTS aver that SABINE PARISH DISTRICT ATTORNEY'S
OFFICE, PARISH OF SABINE, and CITY OF MANY have a policy and/or custom that
caused injuries to COMPLAINANTS.

123.     COMPLAINANTS allege that the Defendant-Municipalities have a persistent,
widespread practice of city officials or employees, which, although not authorized by
officially adopted and promulgated policy, is so common and well settled as to constitute
a custom that fairly represents municipal policy, of which they have actual and constructive
knowledge of this custom that is attributable to them, their figure heads, and their high
ranking officials, to whom that body had delegated policy-making authority.

124.     COMPLAINANTS aver that Defendant-Municipalities are liable for failure to
generate a policy to protect indigent, juvenile, African American males from sexual assault,
to the extent that it arises to deliberate indifference on behalf of Defendant-Municipalities.

125.    COMPLAINANTS aver that Defendant-Municipalities deliberate indifference is obvious to the extent that their failure to have a policy, with regard to protection, reporting, and prosecution of these cases will arise to a deprivation of constitutional rights.

126.    In defiance of the clear constitutional command, DEFENDANTS have at all times relevant herein, promulgated, implemented, enforced and/or failed to rectify a policy, practice and custom allowing officers and deputies to engage in the sort of constitutional violations averred herein without proper oversight or sufficient corrective action. This policy or custom has resulted in the violation of the most fundamental rights of COMPLAINANTS herein.

127.    As a direct and proximate result of the acts described herein effected pursuant to this policy or custom, COMPLAINANTS have suffered severe psychological pain and suffering, mental anguish, and loss of wages.

128.    Upon reason and belief, the SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, and CITY OF MANY do not have a policy concerning investigation and prosecution of juvenile rape cases when the perpetrators are juvenile or are adults that are in high school, concerning taking statements from parents of rape victims, containment of rape videos, protecting youths from bullying, rape, sodomization, dissemination of child pornography.

129.    On information and belief, at the time of the assaults and through January 2021, the SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY did not have a policy concerning investigation and prosecution of juvenile rape cases when the perpetrators are juvenile or are adults that are in high school.

130.     A video of a sexual assault upon juvenile or such other individual is known to be an evidentiary linchpin in sexual assault cases and former DISTRICT ATTORNEYs, defense attorneys, and victim's advocates agree that proper investigation, arrest, and prosecution always includes review of the video evidence and executing such prosecution based on the facts that are presented in the video.

131.     It is further alleged that the reasonable person would agree that departmental protocol in both law enforcement and DISTRICT ATTORNEY'S OFFICEs should require examination and analysis of video evidence. Further, that statements be taken not only from the alleged perpetrators but also from the victim and any others that had witnessed the video or had knowledge of the criminal act.

132.     SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SCHOOL BOARD, and CITY OF MANY should have a policy of protecting victims, getting rapists and/or alleged rapists off the streets to prevent them from raping the same or other victims.

133.     Defendant DON BURKETT is the present DISTRICT ATTORNEY of the 11th Judicial District, a position he has held since 1984. Defendant BURKETT is sued in his official and personal capacity. Defendant BURKETT directly and in conspiracy with other DEFENDANTS deprived COMPLAINANTS of their constitutional rights.

134.     Upon reason and belief that, ALL DEFENDANTS conspired to ensure that COMPLAINANTS' constitutional rights to equal protection, due process, and property rights were violated.

135.     DEFENDANTS BURKETT, MITCHELL, Snelling, and FREEMAN are the elected and effective policy makers for the SABINE PARISH DISTRICT ATTORNEY'S

OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY, respectively.

136.     At all relevant times, DEFENDANTS, SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY acted officially and under color of law, and further that BURKETT, at all times relevant, acted also in his personal capacity and under color of law as the Sabine Parish DISTRICT ATTORNEY.

137.     DEFENDANTS knew that COMPLAINANTS had provided evidence of sexual assault and further knew that neither Defendant was taking steps to investigate, protect, and prosecute allegations, despite the existence and presentation of a video.

138.     DEFENDANTS had a duty to diligently investigate the allegations and to collect the rape video, submit the video to proper agency, review it and prosecute the crimes accordingly to ensure that justice was done on behalf of the victim, an African American, indigent juvenile male. However, DEFENDANTS failed to do so by their own policies and procedures.

139.     Defendant BURKETT, acting individually, and together individuals from the other named agency, in their official capacities, conspired to and engaged in a course of conduct that deprived COMPLAINANTS of their constitutional property right in the video evidence, their right to seek redress in the courts, and of their rights to equal protection and due process by failing to investigate the accused and failing to pick up, analyze, examine, and/or transfer the sexual assault evidence to the appropriate agency.

140.     With deliberate indifference DEFENDANTS failed to draft or implement procedures in either the SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE

PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY to ensure proper investigation of rape cases and proper review, examination, collection, and handling of sexual assault examinations.

141.    DEFENDANTS' deliberate, and willful and wanton conduct created a danger of an increased risk of harm to COMPLAINANTS and other victims of sexual assault, which are disproportionately African American, indigent juveniles, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are allowed to prey on victims without fear of investigation by the SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY.

142.    Upon information and belief, alleged perpetrators and their parents/guardians and the SCHOOL BOARD and UNKNOWN EMPLOYEES knew of Defendant BURKETT and DISTRICT ATTORNEY OFFICE's longstanding refusal to properly investigate sexual assault crimes against African American, juveniles, and indigent people or those who could identify in any or all of these classes of individuals. Let alone, all three in one.

143.    At all relevant times, DEFENDANTS' conduct was intentional, under color of law, and motivated by COMPLAINANTS' race, age, and economic class.

144.    Upon information and belief, DEFENDANTS have a history of discriminating against African American juveniles and the indigent. DEFENDANTS have failed to investigate or take seriously reports of sexual assault from this family and many others and generally treat these allegations with less priority than other crimes not involving sexual assaults against black, indigent, juveniles.

145.     DEFENDANTS, acting individually and collectively, had the duty and ability to prevent the violation of COMPLAINANTS' constitutional rights, but failed to do so. Indeed, their acts lead to the direction violation of their rights.

146.     DEFENDANTS' conduct violated the Fourteenth Amendment's promise of equal protection of the laws and 42 U.S.C. section 1983.

147.     As a direct and proximate result of DEFENDANTS' actions, omissions, policies, practices and customs, COMPLAINANTS' were denied the rights afforded to them by the state and federal constitutions.

148.     A departmental policy established or enacted by either DEFENDANTS Snelling, BURKETT, and FREEMAN, in their respective municipal organizations and their official capacities, requiring collection and examination of rape evidence would have prevented COMPLAINANTS injury and continued suffering, and extreme emotional pain and suffering.

149.     DEFENDANTS had a duty to diligently investigate the allegations and to collect evidence, submit evidence to the necessary agency, and review it as part of their own investigation.

150.     With deliberate indifference, DEFENDANTS failed to implement procedures in either the SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY to provide for proper investigation of rape cases involving juveniles, African Americans, and indigents, and proper review, examination, collection, and handling of juvenile rape and dissemination of juvenile pornography cases.

151.    DEFENDANTS' deliberate indifference and willful and wanton behavior created a danger and increased risk of harm by sexual assault and distribution of child pornography.

152.    DEFENDANTS' conduct violated the Fourteenth Amendment's promise of substantive due process and 42 U.S.C. section 1983.

153.    DEFENDANTS violated COMPLAINANTS' civil rights by having an express policy to not collect evidence, prosecute crimes, protect victims that are African American juvenile, indigent people, or not investigate when members of that class of individuals make a rape or sexual assault allegation. This policy, when enforced, caused a constitutional deprivation to COMPLAINANTS.

154.    Even if DEFENDANTS' conduct did not rise to the level of an express policy, the practice of failing to not collect evidence, prosecute crimes, protect victims that are African American juvenile, indigent males, or not investigate when members of that class of individuals make a rape or sexual assault allegation was so widespread and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

155.    COMPLAINANTS' constitutional injuries inflicted by DEFENDANTS were caused by individual's with final policymaking authority in the SABINE PARISH DISTRICT ATTORNEY'S OFFICE, SABINE PARISH SCHOOL BOARD, SABINE PARISH SHERIFF'S DEPARTMENT, and CITY OF MANY.

156.    DON BURKETT and DISTRICT ATTORNEY'S OFFICE participated, directly, in his individual and official capacities in constitutional violations, in the following regards, to wit:

a.  BURKETT refused to obtain and examine video;

b.  Refused to take a statement from the victim;

c.  Refused to violate the bonds of any of the perpetrators for violation of bond restrictions, despite having physical evidence of the violations;

d.  Reducing bonds to all perpetrators out of detention and/or incarceration;

e.  Modifying bond restrictions;

f.  Denying victim and his family access to records and evidence of perpetrators;

g.  Failing keep victim and his family abreast of updates of the prosecution of the case;

h.  Failing to investigate other criminal activities of the same perpetrators concerning other sex crimes they have been related to;

i.  Failing to recuse himself from the prosecution of the perpetrators, despite his dual representation of the Sabine Parish DISTRICT ATTORNEY'S OFFICE and the Sabine Parish SCHOOL BOARD, who is being sued in civil court under case name: Garner, et. al. v. Sabine Parish SCHOOL BOARD, et. al., Docket Number 70,839;

j.  Failing to charge, prosecute, or filing a bill of information against any perpetrators in approximately one year since the date of the rape;

k.  Informing P.G. and his family (COMPLAINANTS) that the perpetrators would be billed with misdemeanor hazing;

l.  Informing P.G. and his family (COMPLAINANTS) that none of the perpetrators deserved to be registered sex offenders or placed on the sex offender registry;

m.  Conspiring with perpetrators, their families, and the other DEFENDANTS to minimize the rape, so that perpetrators would not suffer punishment for their crimes;

n.   Failure to forward information to the Louisiana State Police and/or Federal Bureau of Investigation;

o.   Failing to prosecute any perpetrator for the distribution of the video to SnapChat;

p.   Failing to provide victim and his family adequate services;

q.   Neither the DA nor any member of his staff met with P.G. nor did they ever speak to him about the alleged assaults;

r.   Failing to allow public access to public records concerning the prosecution of the adult perpetrators; and

s.   BURKETT conspiring with other DEFENDANTS, including P.G.'s alleged rapist, their families, and employees of the SCHOOL BOARD, to ensure that perpetrators would not be convicted of rape, sexual battery, accessory to sexual batter, production/distribution of child pornography, kidnapping, second degree kidnapping, false imprisonment, assault, and battery.

157.     COMPLAINANTS allege that the DON BURKETT's deliberate, willful, and wanton conduct created a danger of an increased risk of harm to P.G. and other victims of sexual assault, which are disproportionately indigent, African American juveniles, by failing to investigate sexual assault crimes, by fostering an environment whereby perpetrators of sexual assault are allowed to prey on victims without fear of investigation by the Sheriff's Department, CITY OF MANY, or DISTRICT ATTORNEY.

158.     After disclosure of the incident, only 6 of the 9 perpetrators were arrested, which the most recent arrest was made more than one week after the disclosure of the incident.

159.     The perpetrators that were not arrested faced no investigation or scrutiny from the DISTRICT ATTORNEY, CITY OF MANY, or the Sheriff.

160.     The perpetrators that were arrested faced minimal scrutiny as they were given almost immediate bond reductions by the DA's Office or released without bond or with minimized bond restrictions.

161.     Further, despite the conditions of bond set forth by the Honorable Judge Beasley regarding the perpetrator's release, the CITY OF MANY, Sabine Parish Sheriff's Department and Sabine Parish DA's office fail to ensure that those bond obligations are met.

162.     Upon reason and belief that the bond obligation have not been met as some of the perpetrators' conditions of bond are for house arrest only. However, COMPLAINANTS have witnessed the perpetrators outside of the home without supervision and have reported said violation of bond obligation, with evidence, to the Sheriff's Department and DISTRICT ATTORNEY'S OFFICE, and the bonds of the perpetrators were never revoked.

163.     Upon further reason and belief, that certain perpetrators have contacted the victim of the sexual assault via text message. This information, likewise, was turned over to the Sheriff's Department and DISTRICT ATTORNEY'S OFFICE, and the perpetrators' bonds were not revoked.

164.     Upon reason and belief that the perpetrators have been permitted to continue on with their lives attending high, playing sports, and the like, while the victim has been caused to change schools due to fear, anxiety, and embarrassment of the sexual assault and sodomization suffered at the hands of the perpetrators and having the video of the assault posted online.

165.     After which time, the 6 perpetrators of the 9 involved in the incident that were arrested underwent psychological evaluations by Dr. Simoneaux, the reports of which were filed into each person's record under seal. The results of which were not disclosed to the victim or his family.

166.     However, what was disclosed to the victim and his family was that based on the results of psychological evaluations, that DON BURKETT would be billing the perpetrators with misdemeanor hazing under La. R.S. 14:40.8, despite the victim and his family's objection, instead of billing them with the crimes they were arrested for.  To date, the bills of information for each arrested perpetrator have not been filed.

167.     Instead of protecting his rights as the victim of a violent crime, DEFENDANTS derided COMPLAINANTS throughout the process, denied them information about and access to victim resources, and violated their rights to equal protection and due process of the law by willfully refusing to do their jobs and instead colluding protect an alleged rapist from prosecution.

168.     The Victim and his family (COMPLAINANTS) have lived in constant fear and emotional stress ever since the perpetrators were released from detention with minimal bond obligations that were not being enforced, they were able to return to school and life as normal.

169.     The victim has been forced to attend school virtually, despite his desire to play sports in school. Then, he attempted to attend school at another location within Sabine Parish where he was ensured that he would be permitted to play sports despite having changed schools. However, Sabine Parish SCHOOL BOARD failed to allow him to play

sports at his new school despite the hardship reason of being sexually assaulted at Many High School. He is still not playing sports at school.

170.     Further, the perpetrators of these heinous sexual acts against the victim, have been permitted to attend school back at Many High School and play sports. The perpetrators have received their lettermen's jackets. However, victim has not, despite his meeting the minimal qualifications to attain a letter jacket for the school.

171.     In spite of the physical injury and severe emotional trauma, COMPLAINANTS have fought tirelessly through SHERIFF'S DEPARTMENT, CITY OF MANY, and DISTRICT ATTORNEY'S OFFICE to hold the perpetrators accountable for their criminal acts of rape and accessory to rap and sexual batter, which they have been unable to do through lawful means.

172.     COMPLAINANTS have continued to tell the details of what happened to him and how he fears that this sexual offense will happen to him yet again, or fears that these same acts will continue occur again on other individuals (just like it happened to another individual the day prior to this incident to another African American, indigent juvenile), and fears that members of the SHERIFF'S OFFICE, the DISTRICT ATTORNEY'S OFFICE, CITY OF MANY, and Sabine Parish SCHOOL BOARD, including the Sheriff and the DISTRICT ATTORNEY, personally, will retaliate against him and his family for continuing to speak openly about the assault and for filing this suit.

173.     Perpetrators were given preferential treatment by DON BURKETT by being permitted to re-enter school, play sports, and return to life as normal, despite P.G. having to attend school virtually and subsequently to re-enter school at another location to not be confronted by his rapists in the halls each day.

174.    COMPLAINANTS now bring this action for violation of their civil rights.

175.    On information and belief, perpetrators' families, SCHOOL BOARD employees, and others met with Defendant BURKETT and/or SABINE PARISH SHERIFF'S DEPARTMENT and/or CITY OF MANY, and potentially others to ensure that perpetrators were given preferential treatment and not required to stay in jail for any length of time, considering the severity of the crimes for which they were arrested.

176.    Since the assault, P.G. and his family (COMPLAINANTS) have experienced severe emotional distress and trauma.

177.    Since the assault, P.G. and his family (COMPLAINANTS) have had flashbacks, nightmares, loss of sleep and appetite. Her social and familial relations have been strained. P.G. lacks funding for adequate mental health care.

178.    P.G. continues to suffer from post-traumatic stress disorder, depression, and other mental and physical health issues.

179.    In short, P.G.'s life has been completely devastated since perpetrators violently assaulted him, and DEFENDANTS, intentionally and/or negligently, failed to adequately investigate and prosecute claims against them.

180.    DON BURKETT and DISTRICT ATTORNEY Office's actions or inactions, protocol and procedures, disproportionately affect indigent, underage sexual assault victims that violated COMPLAINANTS' equal protection rights.

181.    DON BURKETT and DISTRICT ATTORNEY Office's intentional acts in this case and his policies and procedures create the danger of an increased risk of harm to P.G. (COMPLAINANT) and other victims of sexual assault, who are disproportionately minorities and indigent people.

182.    DON    BURKETT's long-standing    refusal    to    investigate    sexual assault crimes against indigent, underage, African American sexual assault victims show a history of this discrimination against minorities and indigent people.

183.    Upon information and belief that another minor child was brutally raped and sodomized by the same perpetrators the day prior to P.G. being raped and sodomized. However, DEFENDANTS failed to investigate, protect, prosecute, or pursue any charges against the perpetrators in that case.

184.    COMPLAINANTS allege that the DON BURKETT implemented policies and procedures that violated their equal protection rights, and as a result of, the alleged conduct, COMPLAINANTS allege detailed mental and physical damages, which were reasonably received for these wrongdoings. Or in the alternative, that they failed to implement policies to that effect at all.

185.    At all times relevant to this complaint and the allegations set forth herein, DON BURKETT was acting under the color of law, both, in his personal and official capacities.


STATE LAW CLAIMS

186.    COMPLAINANTS repeat and reallege each allegation of this complaint under each cause of action and subsection of this COMPLAINANT.

187.    DEFENDANTS' conduct was extreme and outrageous. Knowing that the emotional distress suffered by COMPLAINANTS was severe, DEFENDANTS desired or acted with recklessness to inflict severe emotional distress and/or knew that severe emotional distress would be certain or substantially certain to result from the violent sexual assault. To which, each DEFENDANTS' actions in this case arise to the level of Accessory

After the Fact of Sexual Battery, 2nd Degree Kidnapping, Distribution of Child Pornography, Assault, Battery, and other crimes under Louisiana State Criminal law.

188.    Perpetrators maliciously assaulted P.G., when they inserted a mechanical pencil in P.G.'s anus and then removed it and stuck multiple fingers in, as well; then DEFENDANTS made every effort to ensure the perpetrators would never be held accountable.

189.    Upon information and belief, Perpetrators have inflicted similar sexual assault, harm, and emotional distress on numerous other victims, even the day prior to P.G.'s rape, which is known by all DEFENDANTS, but (just as in this case) was not investigated or prosecuted.

190.    Perpetrators committed intentional offensive contact with P.G. without right, and put him in apprehension of such contact, and DEFENDANTS' actions after the rape support that they were working in concert with the perpetrators to commit and cover-up the violent sexual act.


ABUSE OF PROCESS

191.    COMPLAINANTS repeat and reallege each allegation of this complaint under each cause of action and subsection of this COMPLAINANT.

192.    COMPLAINANTS aver that DON BURKETT, despite the overwhelming evidence against them, use his authority as the DISTRICT ATTORNEY to impede the prosecution against the perpetrators of the sexual assault against P.G. by modifying each perpetrators' bond obligations, reducing their bonds, amending their bills of information to misdemeanor hazing, in order to, impede or abuse his authority and working against the regular conduct of the proceeding with an ulterior purpose in mind.

193.     DEFENDANTS' actions were the cause-in-fact of COMPLAINANTS' injuries.

DIRECT ACTION CLAIMS

194.     COMPLAINANTS repeat and reallege each allegation of this complaint under each cause of action and subsection of this COMPLAINANT.

195.     Defendant Unknown Insurance Companies, on information and belief, have issued and/or currently have in effect one or more policies of insurance covering one or more of the DEFENDANTS named herein. For valuable consideration received, these policies obligated Defendant Insurance Companies, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to COMPLAINANTS or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay to COMPLAINANTS.

196.     By reason of their illegal and unconstitutional acts, DEFENDANTS are liable to COMPLAINANTS for all damages and injuries that each has suffered as a result.

197.     Upon information and belief, Defendant Insurance Companies are contractually obligated to pay these sums on behalf of the insured Defendant(s).

198.     On information and belief, Defendant Insurance Companies are liable to COMPLAINANTS for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of privilege or immunity from liability.

199.     Under Louisiana Revised Statute § 22:655(B), COMPLAINANTS bring a direct action against Defendant Insurance Companies to recover any and all sums they are

obligated to pay COMPLAINANTS on behalf of their insureds or to indemnify their insureds.

DAMAGES

200.     DEFENDANTS actions were malicious and recklessly indifferent to the COMPLAINANTS' federally protected rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the related Louisiana State law constitutional articles. Punitive damages and attorney fees are requested appropriate for the parties being sued in the personal capacities

201.     COMPLAINANTS allege that all relevant times, DEFENDANTS were acting under the color of law and acting in the course and scope of their employment as officers, deputies, and employees of the SABINE PARISH SHERIFF'S DEPARTMENT, CITY OF MANY, SABINE PARISH SCHOOL BOARD, and SABINE PARISH DISTRICT ATTORNEY'S OFFICE.

202.     The actions utilized by DEFENDANTS were illegal, excessive, criminal, and, thus, constituted unreasonable violations of COMPLAINANTS' for violation of Constitutionally protected rights under the First Amendment of the U.S. Constitution, Fourth Amendment of the U.S. Constitution, Fourteenth Amendment of the U.S. Constitution, 28 U.S.C. 1331, 1343 (a)(1), (2), and (4), and 42 U.S.C. § 1983, 1985, 1988, 12131, 12205, as well as state law claims under relevant state law articles for abuse of process, failure to protect, failure to prosecute, mental anguish, and La. C.C. art. 2320 for vicarious liability.

203.     As a result of the violations of COMPLAINANTS' constitutional rights and state law rights by DEFENDANTS, COMPLAINANTS have suffered special damages including medical bills, past, present and future; and general damages, including but not limited to pain, fear, anxiety, mental distress, loss of enjoyment of life, past and future lost wages. DISTRICT ATTORNEY'S OFFICE and DON BURKETT (personally and officially), SCHOOL BOARD (officially and via *respondiat superior*), UNKNOWN EMPLOYEES, SHERIFF'S DEPARTMENT (officially and via *respondiat superior*), UNKNOWN DEPUTIES, CITY OF MANY (officially and via *respondiat superior*), POLICE CHIEF KYLE COOK and UNKNOWN OFFICERS, are being sued for the following reasons, to wit:

    a. Intentionally and/or negligently depriving COMPLAINANTS of their constitutional rights and participating in unlawful acts as described more specifically above;

    b. Failing to do what they should have done and to being callously indifferent to the constitutional rights of COMPLAINANTS, including knowingly violating what they knew or should have known to be those constitutional rights;

    c. Failing to adhere to proper standards;

    d. Failing to following all internal procedures, safeguards and protocol required by generally accepted by each agency; and

    e. All of their actions were undertaken under color of law, and within the scope of their employment such that their employers are liable for their actions.

204.     COMPLAINANTS incorporate all the foregoing allegations, herein. Additionally, under state law, COMPLAINANTS are entitled to damages for DEFENDANTS' tortious

acts on them, as described more fully above. CITY OF MANY, SABINE PARISH SHERIFF'S DEPARTMENT, SABINE PARISH SCHOOL BOARD, SABINE PARISH and DISTRICT ATTORNEY'S OFFICE are vicariously liable for the delicts of their employees under La. C.C. 2320. DEFENDANTS are liable to COMPLAINANT for their acts and omissions for:

    f.  Embarrassment;

    g.  Shame;

    h.  Fear;

    i.  Mental anguish;

    j.  Assault;

    k.  Aggravated assault;

    l.  Battery;

    m.  Second degree battery;

    n.  Unauthorized entry of an inhabited dwelling;

    o.  Sexual Battery;

    p.  Accessory to Sexual Battery;

    q.  Accessory after the Fact to sexual battery;

    r.  Kidnapping;

    s.  Second degree kidnapping;

    t.  Intentional infliction of emotional distress;

    u.  Negligent infliction of emotion distress; and

    v.  Abuse of process.

205.     For all the actions and inactions described above caused resulting injury to COMPLAINANTS, they are individually, and/or collectively, entitled to damages for:

w.  Mental suffering and anguish;

x.  Psychological suffering and anguish;

y.  Emotional distress, inflicted both negligently and intentionally;

z.  Economic losses including having to pay Attorney's Fees for the defense of the above-mentioned charges;

aa. Lost/reduced wages; and

bb. Past, present, and future medical expenses.

206.     COMPLAINANTS seek and are entitled to attorney's fees for violation of Constitutionally protected rights under the First Amendment of the U.S. Constitution, Fourth Amendment of the U.S. Constitution, Fourteenth Amendment of the U.S. Constitution, 28 U.S.C. 1331, 1343 (a)(1), (2), and (4), and 42 U.S.C. § 1983, 1985, 1988, 12131, 12205, as well as state law claims under relevant state law articles for abuse of process, failure to protect, failure to prosecute, mental anguish, and La. C.C. art. 2320 for vicarious liability.

207.     COMPLAINANTS respectfully request TRIAL BY JURY.

PRAYER FOR RELIEF

COMPLAINANTS, ELLIOT GARNER, in his own right and on behalf of P.G., and ROSE

GARNER, in her own right, request that this Court assume jurisdiction over this cause, grant them

compensatory and punitive damages, costs and attorney's fees, judicial interest running from date

of demand, and award all other proper relief, consistent with the foregoing allegations.

Respectfully Submitted,


/s/ *Mary K. "Katie" Beaird*
**Mary K. "Katie" Beaird,**
**Attorney at Law**
La. Bar Roll #34,440
303 E. Texas Street
Leesville, LA 71446
T (337) 944- 0299
F (337) 415- 0081
Mkb@marykbeaird.com